NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ARUANNO, | Civil No. 09-5652 (WJM) |
| Plaintiff, | |
| v. | OPINION |
| OFFICER CALDWELL, et al., | |
| Defendants. | |

**APPEARANCES:**

    JOSEPH ARUANNO, #363
    Special Treatment Unit- Annex
    P.O. Box #CN905
    Avenel, NJ 07001

**MARTINI**, District Judge:

    Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, filed a Complaint without prepayment of the filing fee. See 28 U.S.C. § 1915(a). This Court dismissed the Complaint for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint stating a cognizable claim under 42 U.S.C. § 1983 against at least one named defendant. On June 7, 2010, Plaintiff filed an Amended Complaint. Having thoroughly reviewed Plaintiff's allegations in the Amended Complaint, this Court will dismiss the Amended Complaint for failure to state a claim upon which relief may be granted as against defendants Merrill Main, George Hayman, and Jennifer Velez, and allow the § 1983 excessive force claim to proceed against defendant Officer Caldwell.

# I.  BACKGROUND

Plaintiff has been civilly committed as a sexually violent predator since 2004.  As explained in 2010 by the Third Circuit Court of Appeals,

> [i]n 1994, while in Florida, he exposed himself to two adolescent girls as they were walking home from school and engaged in lewd conduct in their presence.  As a result of this incident, Aruanno pled guilty to second-degree lewd conduct, and was sentenced to ten years' probation.  Just two years later, in 1996, Aruanno sexually molested an eight-year-old girl who had been playing on the front steps of her house in Wildwood, New Jersey.  A jury convicted Aruanno of second-degree sexual assault, and he was sentenced to ten years in prison, and disqualification from parole for five years.  The Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence.  The New Jersey Supreme Court denied certification.  State v. Aruanno, 793 A. 2d 716 (N.J. 2002) (table op.).
>
> In April 2004, while Aruanno was still serving his prison sentence, the State of New Jersey . . . filed a petition to involuntarily commit Aruanno pursuant to the New Jersey Sexually Violent Predator Act ("SVPA), N.J.S.A. § 30:4-27.24 et seq. . . . .
>
> At the commitment hearing, the State presented the testimony of Dr. Vivian Shnaidman . . . .  Dr. Shnaidman testified that Aruanno was a chronic paranoid schizophrenic, but her diagnosis explicitly ruled out diagnoses of exhibitionism and pedophilia.  Nevertheless, Dr. Shnaidman opined that Aruanno's schizophrenia, when combined with his previous violent conduct, created a "very high" risk of future violence.  In particular, because Aruanno refused to take psychotropic medication to treat his schizophrenia, he would continue to suffer from psychotic delusions which would render sex offender treatment useless.  According to Dr. Shnaidman, Aruanno would have serious difficulty controlling his sexually predatory behavior without undergoing treatment for his schizophrenia . . . .
>
> Aruanno testified on his own behalf at the hearing.  He denied committing either the Florida or the New Jersey offense, and testified that he believed the State had filed the commitment

> petition in retribution for his decision to go to trial for the New Jersey offense, rather than accepting a deal to plead guilty . . . .
>
> The state court found that Aruanno suffered from a mental abnormality which created "substantial, significant, severe difficulty controlling his sexually violent behavior," and granted the State's petition for involuntary commitment. Aruanno appealed the order, and the Appellate Division affirmed. In re Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App. Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the conviction, and remanded the case.[1] See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

The original Complaint in this case (Docket Entry #1) named the following defendants: Officer Caldwell, Dr. Merrill Main, Commissioners George Hayman and Jennifer Velez, and 20 John and Jane Does.  Plaintiff asserted the following in the section of the form complaint instructing him to state the facts of his case:

> Despite numerous federal cases such as #01-789; #04-3066; #07-1212; #08-305; etc; the defendants have been permitted to continue to engage in such brutal and sadistic retaliation with impunity without any concern for requested injunctive relief in these cases, though counsel has made many promises to obtain the restraining orders we request but has been one big lie, where on 9-17-09

---

[1] This Court was not able to determine through online research the outcome of the remand.

3

> defendant Caldwell entered my cell and attacked me for "snitching" as he called my litigation.
>
> And which includes having hearings recently in front of Superior Court Judges John Kennedy and Philip Freedman about issue in #08-305 where after the concern of violence was raised the defendants were warned that, "the hearings are confidential, etc.," but despite that the defendants immediately retaliated again[st] plaintiff, other residents and staff members who also testified about the crimes being committed here.
>
> And which is to the degree of being condoned by all involved in the cases listed above in the federal courts since they had been made aware of this problem over eight years ago and refuse to act, or comply, making them failed cases and which has le[]d to all cases after #01-789.
>
> As to Dr. Merrill Main he placed me on M.A.P. penalty status before any hearings or the ability to contact any lawyers. And before a finding of guilt by a jury since "false" criminal complaints were submitted against me to the prosecutor.
>
> And which includes being locked in solitary confinement without sending or receiving mail; withholding my typewriter also to obstruct legal access here; throwing legal documents and mail in the trash; denying any medical attention or even a shower; continued threats to my life; continued denial of access to courts, lawyers, etc., which complies with due process of being adequate; have stated I must confess in writing before violations stop; etc....All in violation of the 4th, 5th, 6th, 8th, 14th, amendments of the U.S. Constitution.

(Docket entry #1 at p. 7.)[2]

---

[2] This Court's docket shows that on March 29, 2010, in Alves v. Ferguson, Civil No. 01-0789 (DMC) opinion (D.N.J. Mar. 29, 2010), a civil action concerning the conditions of confinement, Judge Cavanaugh denied the motion for injunctive relief filed by at least 28 civilly committed sexually violent predators who sought to enjoin the State from transferring them from the Special Treatment Unit in Hudson County to another facility. The other three cases to which Plaintiff refers are closed. Bagarozy v. Harris, Civil No. 04-3066 (JAP), and Hasher v. Corzine, 07-1212 (DMC), were consolidated with Civil No. 01-0789 and closed on January 4, 2008, and January 13, 2009, respectively. On April 23, 2010, Judge Linares dismissed the complaint in

(continued...)

Plaintiff further asserted that Caldwell, a Department of Corrections Officer at the Northern Regional Unit, violated his rights when "On 9-17-09 Officer Caldwell entered my cell for the purpose of attacking me which resulted in serious injury. All in retaliation for my litigation, or "snitching" as he called it." (Docket entry #1 at p. 4.) Plaintiff alleged that Main violated his constitutional rights as follows: "Despite having been warned about abuse and threats Merrill Main allows them to continue [and] placed me on penalty status before investigation is complete, without my typewriter which only serves to obstruct justice, which results in due process violations, etc...." (Id. at p. 5.) Plaintiff sought the following relief:

> Before defendants finally do kill me as they state, before they are able to attack me one more time, I ask that the District Court finally act here and order some form of protection including a temporary restraining order or whatever the court feels is best. And which includes restoring legal access such as typewriter; mail; etc....Also, $10,000,000.00 in punitive damages.

(Docket entry #1 at p. 8.)

In an Opinion filed May 6, 2010, this Court dismissed the Complaint for failure to state a claim upon which relief may be granted as follows:

> Plaintiff, a civilly committed sexually violent predator, brings this Complaint under § 1983 against Officer Caldwell, Dr. Merrill Main, then Department of Corrections Commissioner George Hayman, then Department of Human Services Commissioner Jennifer Velez, and several John and Jane Does. Aside from listing Hayman and Velez in the caption, nowhere in Plaintiff's submissions does Plaintiff even mention these defendants by name or show how they were involved in any

---

²(...continued)
Aruanno v. Booker, Civ. No. 08-0305 (JLL) opinion (D.N.J. Apr. 23, 2010), due to Mr. Aruanno's refusal to comply with discovery. On October 14, 2010, the Third Circuit affirmed, finding that "[t]he record supports the District Court's finding that Aruanno's failure to cooperate with discovery was willful." Aruanno v. Booker, 397 Fed. App'x 756, 758 (3d Cir. 2010).

5

allegedly unconstitutional conduct.  Instead, using the passive voice, Plaintiff makes conclusory statements about being "attacked (without describing what force was used, or providing any factual allegations or context)," being the subject of "brutal and sadistic retaliation" (without any factual elaboration), and "being locked in solitary confinement" (for an unspecified period of time).[3] However, these "bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim, [and a]s such [are] not entitled to be assumed true." Iqbal, 129 S. Ct. at 1951 (citations and internal quotation marks omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948.  Because the Complaint makes no non-conclusory factual allegations regarding Hayman and Velez, and vicarious liability does not apply under § 1983, this Court will dismiss the claims against Hayman and Velez for failure to state a claim upon which relief may be granted.

Although the body of the Complaint mentions Officer Caldwell and Dr. Merrill Main by name, the additional factual assertions against these defendants are conclusory or too cryptic to "nudge" Plaintiff's claims of retaliation and denial of access to courts "across the line from conceivable to plausible," as required by the Iqbal standard.  Iqbal, 129 S. Ct. at 1951.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . .  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).

In this Complaint, Plaintiff alleges that Dr. Main placed him in solitary confinement (for an unspecified period of time), where Plaintiff had no access to mail, a typewriter, or a shower.  Plaintiff further asserts that, "despite having been warned about abuse and threats Merrill Main allows them to continue." (Docket entry #1 at

---

[3] To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must assert facts showing that ""1) the conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse action' at the hands of . . . officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to [take adverse action]." Carter v. McGrady, 292 F. 3d 152, 158 (3d Cir. 2002) (citation omitted).

p. 5.) To establish deliberate indifference, a plaintiff must "show[] that the official was subjectively aware of the risk" and failed to reasonably respond. Farmer v. Brennan, 511 U.S. 825, 829 (1994). Placement of a civilly committed sexually violent predator in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. App'x 719, 721 (3d Cir. 2007) (applying Sandin v. Conner, 515 U.S. 472 (1995), to segregated confinement of civilly committed sexually violent predators). And to establish standing for an access to courts claim, plaintiffs must assert "(1) that they suffered an actual injury - that they lost a chance to pursue a nonfrivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)) (internal quotation marks omitted).

The allegations regarding Main are precisely the sort of pleading the Supreme Court disregarded in Iqbal. Iqbal pleaded that the named defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" Iqbal, 129 S. Ct. at 1951. The Court held that these "bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, [and a]s such, the allegations are conclusory and not entitled to be assumed true." Iqbal, 129 S. Ct. at 1951 (citations and internal quotation marks omitted). Because Plaintiff's allegations that Main allowed unspecified "abuse" to continue and placed Plaintiff in segregated confinement for an unspecified period of time are conclusory, these bare allegations are not entitled to the assumption of truth and the Complaint fails to state a claim for relief under § 1983 against Dr. Main.

Plaintiff pleads that on September 17, 2009, defendant Caldwell "entered [his] cell and attacked [him] for 'snitching' as he called [Plaintiff's] litigation," which resulted in "serious injury." (Docket entry #1 at pp. 4, 6.) Plaintiff provides no elaboration. Under Iqbal, the unadorned allegations that Caldwell "attacked" Plaintiff and that this resulted in "serious injury" are "no more than conclusions [which] are not entitled to the assumption of truth."

7

> Iqbal at 1950.  As Plaintiff makes no non-conclusory factual allegations regarding what Caldwell did or failed to do that violated Plaintiff's rights under § 1983, the claim against Caldwell will be dismissed for failure to state a claim upon which relief may be granted.

(Docket Entry #3, pp. 7-10.)

This Court granted Plaintiff leave to correct the deficiencies in the Complaint, and on June 7, 2010, Plaintiff filed a 1.5-page Amended Complaint.  (Docket Entry #6.)  In the Amended Complaint, Plaintiff states:

> As to the incident defendant Caldwell has just questioned JA about recent incidents involving his complaints about the Dept. of Corrections (DOC) then left his cell only to return minutes later and attacked JA by punching and kicking him in the head while yelling "I AM GOING TO KILL YOU SNITCH," etc., which then continued in the dayroom when JA managed to run for help where while he lay on the floor being continuously punched many other residents who witnessed the attack immediately called the Office of the Public Advocate whom immediately came to see JA.
>
> The first staff member JA confronted was Officer Cruz where JA asked him to "call a code" where he refused only to assist defendant Caldwell first yelling "KICK HIS ASS," then kicking him while he lay on the floor.  Only to then call a code AFTER they were done beating JA . . .
>
> All named defendants, and other John Does, had been warned personally about threats of retaliation and certain types of retaliation such as assaults, including by Superior Court Judge Philip Freedman, properly placing them as defendants.
>
> Then they lied by stating JA attacked them which is why they have placed him in lock-up, where he remains today, which makes it "EXTREME" . . . .  [T]he defendants attacked JA, wrongfully searched and seized, or placed in lock-up, conspired to conceal and filed false charges against JA contrary to the 4th, 8th & 14th Amendments . . .

(Docket Entry #6, pp. 1-2.)

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[4] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience

---

[4]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

> and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983. See Iqbal, 129 S Ct. at 1947-48. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

To recover on a claim of excessive force, a plaintiff must show that his treatment amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 320-21 (1986).[5] Whether the use of force rises to such a level is determined by "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley, 475 U.S. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973))). In resolving this question, a court must evaluate "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts

---

[5] Because Plaintiff is civilly committed, his claim arises under the Due Process Clause of the Fourteenth Amendment. See Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982). However, Eighth Amendment standards are applicable to his claim. See Rivera v. Marcoantonio, 153 Fed. App'x 857, 859 n. 1 (3d Cir. 2005); Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754, 762 (3d Cir. 1979).

made to temper the severity of a forceful response." Giles v. Kearney, 571 F.3d 318, 328 (3d Cir. 2009). "Force that exceeds that which is reasonable and necessary under the circumstances is actionable." Id.

Plaintiff asserts in the Amended Complaint that on September 17, 2009,[6] after questioning Plaintiff about Plaintiff's recent complaints of other incidents, defendant Officer Caldwell "attacked JA by punching and kicking him in the head while yelling 'I AM GOING TO KILL YOU SNITCH,' etc., which then continued in the dayroom when JA managed to run for help where while he lay on the floor being continuously punched . . ." (Docket Entry #6, p. 1.) Given that, on the facts alleged by Plaintiff, the punching and kicking by Caldwell was unprovoked, this Court finds that Plaintiff's Amended Complaint adequately asserts facts stating a § 1983 excessive force claim against defendant Caldwell, and will allow this claim to proceed.

Plaintiff also sues Dr. Merrill Main and former Commissioners Hayman and Velez, presumably for failure to protect. To state a failure to protect claim, a plaintiff must assert facts showing that he faces "a substantial risk of serious harm," Farmer v. Brennan, 511 U.S. 825, 834 (1994), and that the named defendant in fact "knows of and disregards an excessive risk to inmate health or safety," id. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838.

The Amended Complaint fails to assert facts showing that these supervisory and administrative defendants knew that Plaintiff faced an excessive risk of being punched and

---

[6] Plaintiff does not provide a date in the Amended Complaint, but the original Complaint states that Caldwell attacked Plaintiff in his cell on September 17, 2009.

kicked by an officer.  Without providing any factual detail, Plaintiff merely concludes that "[a]ll named defendants, and other John Does, had been warned personally about threats of retaliation and certain types of retaliation such as assaults, including by Superior Court Judge Philip Freedman, properly placing them as defendants.  Then they lied by stating JA attacked them which is why they have placed him in lock-up." (Docket Entry #6, p. 1.)  However, in the absence of factual elaboration, this conclusory allegation does not state a failure to protect claim against Dr. Merrill Main and the commissioners of the Department of Corrections and Human Services.  Thus, Main, Hayman and Velez will be dismissed as defendants.

## IV.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Complaint as against defendants Main, Hayman and Velez, and allow the § 1983 excessive force claim to proceed against defendant Caldwell.  The Court will enter an appropriate Order.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: June 8, 2011